IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREEM HASSAN MILHOUSE, | : | |
| | : | |
| Plaintiff | : | CIVIL NO. 1:14-CV-01973 |
| | : | |
| vs. | : | |
| | : | |
| FRANCIS FASCIANA, et al. | : | (Judge Rambo) |
| | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

**Background**

Plaintiff Kareem Hassan Milhouse, an inmate
currently incarcerated at the United States Penitentiary
at Lewisburg, Pennsylvania ("USP-Lewisburg), filed his
complaint on October 10, 2014, pursuant to 28 U.S.C. §
1331 and <u>Bivens v. Six Unknown Named Agents of the
Federal Bureau of Narcotics</u>, 403 U.S. 388 (1977).[1]

---

1.  28 U.S.C. § 1331 states as follows: "The district
court shall have original jurisdiction of all actions
arising under the Constitution, laws, or treaties of
the United States."
   <u>Bivens</u> stands for the proposition that "a citizen
suffering a compensable injury to a constitutionally
protected interest could invoke the general federal
question jurisdiction of the district court to obtain
an award of monetary damages against the responsible
federal official." <u>Butz v. Economou</u>, 438 U.S. 478, 504
(1978).

Named as defendants are the following three individuals employed at USP-Lewisburg: (1) Francis Fasciana, who is alleged by Milhouse to be a "Mid-Level Provider"; (2) Alama, alleged to be a physician assistant; and (3) Kevin Pigos, referred to as "Clinical Director/Doctor." Doc. 1, at 1-2. In the complaint Milhouse complains of medical treatment he received at USP-Lewisburg or the lack thereof from April 28 to October 6, 2014. Id. at 2-4. He claims that Defendant Fasciana "deliberately [and] maliciously discarded" sick call requests "without attempting to provide any medical treatment. Id.  He claims that on September 29, 2014, at approximately 6:53 a.m., he was "defecating dark blood [and] bright red blood earlier that date and the day before." Id. Milhouse claims that he has a "serious health condition that has been diagnosed which is causing extreme pain" and that Defendant Fasciana "has failed to treat any conditions" and has told him to "submit a sick call to Kevin Pigos." Id.  Milhouse contends that in July, 2014, Defendant Alama discarded a sick call request and did not provide any treatment.  Id.  Milhouse admits that he was seen by Defendant Pigos "for a chronic care"

appointment on June 30, 2014, and that Defendant Pigos told him that if he had "any health concerns follow up at sick call." Id.  Milhouse claims that "prison officials are in cahoots with each other to deprive" him of medical treatment. Milhouse lists his medical conditions as chest pain, heart problems, hemorrhoids, blood in his stool, backache, nerve pain, hypertension, esophageal reflux, benign enlargement of prostate and depressive disorder. Id. at 2-3 and 8-9.  As relief Milhouse requests a transfer to another institution to receive appropriate medical treatment and compensatory damages from each of the defendants in the amount of $5,000,000 as well as punitive damages from each defendant in the same amount. Id. at 3.

On October 14, 2014, the court's Standing Practice Order was issued which advised Milhouse of his obligations under the Local Rules of Court, including supporting any motion with a separately filed brief. M.D.Pa. Local Rule 7.5. On June 29, 2015, Milhouse filed a motion for preliminary injunction. Doc. 18.  Milhouse failed to file a supporting brief and by order of

October 5, 2015, the motion was deemed withdrawn

pursuant to Local Rule 7.5.

Currently pending before the court is a second

motion for preliminary injunction (Doc. 46) filed by

Milhouse on October 8, 2015.  On October 23, 2015,

Milhouse filed a brief in support of that motion. Doc.

50.  In the motion for preliminary injunction Milhouse

alleges that he suffers from a lower back condition

which causes pain and he requests that the court direct

the defendants to (1) schedule him for a chronic care

clinic, (2) place him in a medical cell, (3) issue him a

lower bunk and double mattress, and (4) transfer him to

a medical institution. Doc. 46.

On November 6, 2015, Defendants filed a brief in

opposition along with an unsworn declaration under

penalty of perjury pursuant to 28 U.S.C. § 1746 from

Defendant Pigos and copies of Milhouse's medical records

for the period August 25, 2015 through October 26, 2015.

The affidavit from Defendant Pigos states in toto as

follows:

> 1. I am a Physician currently employed by the
> Federal Bureau of Prisons as the Clinical

Director at United States Penitentiary,
Lewisburg, Pennsylvania.  I am familiar with
inmate Kareem Milhouse, Reg. No. 59904-066.
I have been informed that inmate Milhouse has
filed yet another emergency motion with the
court alleging he is in imminent danger of
serious physical harm because he is not
receiving adequate medical care.

2.   Inmates, like Milhouse, who are designated
to the Special Management Unit (SMU) Program,
have access to Health Services staff every day.
Medical Staff make rounds through the SMU daily.

3.   Accurate copies of inmate Milhouse's
BOP medical records for the time period August
25, 2015, through October 26, 2015, are
attached.  Medical records for care he has
received prior to this time period have
previously been submitted in this matter.

4.   On September 28, 2015, inmate Milhouse
had an MRI, which confirmed bilateral
neuroforaminal stenosis with anterolisthesis
of L-5 on S1. The staff physician noted the
potential for a good result with surgical
correction and noted a neurosurgery consultation
request was generated.  On October 7, 2015,
Milhouse was given a lower bunk pass.  His
current mattress is appropriate for his medical
and security needs.

5.   Inmate Milhouse complains that the
Gabapentin he is receiving is not appropriate
for this inmate's medical condition.  He has
attached a copy of medical record to his own
filing accurately noting the medication
indication as "low back pain, lumbago, nerve
pain, neuralgia, radiculitis."

6. Inmate Milhouse continues to receive timely
refills of required medication, including:

his Mometasone Furoate Inhaler,[2] Gabapentin, Chlorpheniramine,[3] Aspirin, Tolnaftate Cream,[4] Selenium Sulfide shampoo/lotion,[5] and Milk of Magnesia.

7.   Bureau of Prisons policy directs that inmates assigned to Chronic Care Clinics be seen by a physician every 12 months, not every 6 months as inmate Milhouse states.  An accurate copy of an excerpt of [Program Statement] 6031.04, Patient Care is attached. Inmates may be seen more frequently if clinically indicated. As set forth in the medical records provided with this response, and previous responses, inmate Milhouse continues to have frequent contact with physicians.

---

2.  Mometasone furoate, Nasonex, is a medication used to treat as well as prevent seasonal and indoor allergies. Nasonex, http://nasonex.com/nasx/index.jsp?WT.mc_id =NA08R&MTD=2&CPN=2&ENG=1&utm_source=bing&utm_medium=cpc &utm_term=mometasone%20furoate&utm_campaign=Brand+07%2F 10&utm_content=ZI5xRuKn|dc_pcrid_1781124433 (Last accessed November 23, 2015).

3.  Chlorpheniramine is an antihistamine used to treat runny nose, sneezing, itching, and watery eyes caused by allergies. Chlorpheniramine, Drugs.com, http://www.drugs.com/mtm/chlorpheniramine.html (Last accessed November 23, 2015).

4.  Tolnaftate topical (brand names include Tinactin) is a medication used to treat fungal skin infections, such ast athlete's foot and ringworm. Tolnaftate topical, Drugs.com, http://www.drugs.com/mtm/tolnaftate -topical.html (Last accessed November 23, 2015).

5.  Selenium sulfide topical is an antifungal medications used to treat dandruff and a fungus that discolors the skin. Selenium sulfide topical, Drugs.com, http://www.drugs.com/mtm/selenium- sulfide-topical.html (Last accessed November 23, 2015).

8.   As the attached medical records indicate,
Milhouse continues to receive appropriate care,
and is not in imminent danger as a result of any
lack of medical treatment.  He continues to be
medical appropriate for USP Lewisburg.

9. The documents attached to this declaration:
a. are true and correct copies of records
maintained by the Bureau of Prisons; b. were
created at on near the time of the occurrence of
the matters reflected therein by someone with
knowledge; or c. were made by the Bureau of
Prisons as a regular practice.  I am custodian
of the documents or am otherwise qualified
to execute this certification, pursuant to
Fed.R.Evid. 803(6) and 902(11).[]

Doc. 53-1, at 3-5.  Milhouse's second motion for a

preliminary injunction became ripe for disposition on

November 23, 2015, when he elected not to file a reply

brief.  For the reasons set forth below the motion will

be denied.

**Discussion**

Preliminary injunctive relief is extraordinary

in nature, and is discretionary with the trial judge.

Orson, Inc. v. Miramax Film Corp., 836 F. Supp. 309, 311

(E.D. Pa. 1993) (citing Skehan v. Board of Trustees of

Bloomsburg State College, 353 F. Supp. 542 (M.D. Pa.

1973)).  In determining whether to grant a motion

seeking preliminary injunctive relief, courts in the
Third Circuit consider the following four factors:  (1)
the likelihood that the applicant will prevail on the
merits; (2) the extent to which the movant is being
irreparably harmed by the conduct complained; (3) the
extent to which the non-moving party will suffer
irreparable harm if the preliminary injunction is
issued; and (4) whether granting preliminary injunctive
relief will be in the public interest.  S & R Corp. v.
Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992)
(citing Hoxworth v. Blinder, Robinson & Co., 903 F.2d
186, 197-98 (3d Cir. 1990)); Instant Air Freight v. C.F.
Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989);
Premier Dental Prods. Co. v. Darby Dental Supply Co.,
794 F.2d 850, 852 (3d Cir.), cert. denied, 479 U.S. 950
(1986).  It is the moving party that bears the burden of
demonstrating these factors.  See Dorfman v. Moorhous,
No. Civ. A. 93-6120, 1993 WL 483166 at *1 (E.D. Pa.,
Nov. 24, 1993).

Perhaps the most important prerequisite for the
issuance of a preliminary injunction is a demonstration

that if it is not granted, the applicant is likely to

suffer irreparable harm before a decision on the merits

can be rendered.  Continental Group, Inc. v. Amoco

Chems. Corp., 614 F.2d 351, 356 (3d Cir. 1980); see

Wright & Miller, Federal Practice and Procedure: Civil

Sec. 2948 at 431 (1973).  The Third Circuit Court of

Appeals has defined irreparable injury as "potential

harm which cannot be redressed by a legal or equitable

remedy following a trial." Instant Air Freight, 882 F.2d

at 801.  A court may not grant preliminary injunctive

relief unless "[t]he preliminary injunction [is] the

only way of protecting the plaintiff from harm."  Id.

The relevant inquiry is whether the party moving for the

injunctive relief is in danger of suffering the

irreparable harm at the time the preliminary injunction

is to be issued.  SI Handling Sys., Inc. v. Heisley, 753

F.2d 1244, 1264 (3d Cir. 1985).

Clearly, speculative injury does not constitute

a showing of irreparable harm.  Continental, 614 F.2d at

359; see also Public Serv. Co. v. West Newbury, 835 F.2d

380, 383 (1st Cir. 1987).  "The possibility that

adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Instant Air Freight, 882 F.2d at 801 (quoting Sampson v. Murray, 415 U.S. 61, 90 (1964)).

It is abundantly clear that Milhouse has not shown that he deserves preliminary injunctive relief according to the pertinent legal standards outlined above. The complaint alleges problems with the chronic care clinic and inadequate medical care.  However, Milhouse's medical records provided by Dr. Pigos, as well as Milhouse, demonstrate that Milhouse is receiving medical care and treatment by way of medications and frequent encounters with medical personnel. The medical records do not evince an inmate suffering a medical condition of such imminent degenerative or life threatening severity which would require a transfer to a medical institution.

To establish an Eighth Amendment claim under § 1983, Milhouse must show that the prison official acted with "deliberate indifference" to a substantial risk of

serious harm.  Farmer v. Brennan, 511 U.S. 825, 827

(1994) (citing Helling v. McKinney, 509 U.S. 25 (1993);

Wilson v. Seiter, 501 U.S. 294 (1991); Estelle v.

Gamble, 429 U.S. 97 (1976)).  In other words, the

official must know of and disregard an excessive risk to

inmate health or safety.  Natale v. Camden County Corr.

Facility, 318 F.3d at 582; Farmer, 511 U.S. at  837.

This standard "affords considerable latitude to prison

medical authorities in the diagnosis and treatment of

the medical problems of inmate patients.  Courts will

'disavow any attempt to second guess the propriety or

adequacy of a particular course of treatment. . . which

remains a question of sound professional judgment.'"

Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D.

Pa. 1996) (quoting Inmates of Allegheny County Jail v.

Pierce, 612 F.2d 754, 762 (3d Cir. 1979).

     Milhouse's disagreement with the course of

treatment does not serve as a predicate to liability

under Bivens.  When an inmate is provided with medical

care and the dispute is over the adequacy of that care,

no Eighth Amendment claim exists.  White v. Napoleon,

897 F.2d 103, 108-10 (3d Cir. 1990).  "A medical

decision not to order an X-ray, or like measures, does

not represent cruel and unusual punishment.  At most it

is medical malpractice[.]"  Estelle, 429 U.S. at 107.  A

mere difference of opinion between the inmate and the

prison's medical staff regarding the diagnosis or

treatment that the inmate receives does not support a

claim of cruel and unusual punishment.  See McFadden v.

Lehman, 968 F. Supp. 1001 (M.D. Pa. 1997); Young v.

Quinlan, 960 F.2d 351, 358 n.18 (3d Cir. 1992).  The key

question is whether the defendant has provided the

plaintiff with some type of treatment, despite whether

it is what the plaintiff wants. Farmer v. Carlson, 685

F. Supp. 1335, 1339 (M.D. Pa. 1988).  Milhouse has not

made a strong showing that he is likely to prevail on

the merits. At most, his filings and arguments support a

disagreement with the medical care that he is receiving.

Such disagreement is not a sufficient basis to warrant preliminary injunctive relief.

Furthermore, Milhouse has not alleged facts from which it can be concluded that he will suffer irreparable harm if preliminary injunctive relief is denied.  Milhouse is being provided with medical care and has access to medical personnel at USP-Lewisburg every day.  As such, Milhouse has not shown that he will suffer any irreparable injury as a result of an alleged lack of medical care.

An appropriate order will be entered.


s/Sylvia H. Rambo
United States District Judge

Date: November 30, 2015