IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OLEKSANDR V. OLIYNYK,<br>    Petitioner<br><br>    v.<br><br>WARDEN DOLL,<br>    Respondent | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:    No. 1:17-cv-02197<br><br>   (Judge Kane) |

**MEMORANDUM**

Before the Court is Petitioner Oleksandr V. Oliynyk ("Oliynyk")'s, motion to enforce (Doc. No. 10), this Court's February 5, 2018 Order (Doc. No. 9), granting his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 insofar as this Court ordered that Oliynik should be afforded an individualized bond hearing before an immigration judge. Respondent has filed a brief in opposition to Oliynik's motion (Doc. No. 12), and Olyinik has filed a reply brief (Doc. No. 14). Accordingly, this matter is ripe for disposition.

**I.  BACKGROUND**

Oliynyk, a citizen and native of Ukraine, was admitted to the United States by immigration officials at the Greater Pittsburgh International Airport as a Non-Immigrant student to attend West Virginia University in Morgantown, West Virginia. (Doc. No. 6, Exs. 1, 2.) Between 2006 and 2013, Oliynyk's criminal record included shoplifting, disorderly conduct, driving under the influence of liquor, various traffic offenses, and larceny. (Id. at Ex. 1.) Oliynyk was charged and convicted of "theft by deception – false impression" on May 22, 2013, sentenced to three and a half (3.5) to seven (7) years' confinement, and ordered to pay $431,796.36 in victim restitution. (Id. at Ex. 2.)

Oliynyk was taken into ICE custody on May 23, 2017, and charged as being removable pursuant to Sections 237(a)(2)(A)(iii) and 237(a)(1)(C)(i) of the Immigration and Nationality Act

1

("INA"). (Id. Exs. 2, 3.) On September 8, 2017, an immigration judge ordered that Oliynyk be removed from the United States to Ukraine and denied his applications for asylum, withholding of removal, and deferral of removal under the Convention Against Torture Act ("CAT"). (Id., Ex. 4.) On September 18, 2017, an immigration judge denied Oliynyk's request for custody re-determination after holding a hearing on August 22, 2017. (Id., Ex. 5.) Oliynyk appealed the immigration judge's removal order to the Board of Immigration Appeals ("BIA"), on September 28, 2017, with briefing due on December 26, 2017. (Id., Ex. 7.)

On November 30, 2017, Oliynyk filed a petition for a writ of habeas corpus seeking an individualized bond hearing before an immigration judge or release from detention. (Doc. No. 1.) Oliynyk contends that his prolonged detention of over six months is unreasonable. (Id.) The Court issued an Order on December 12, 2017, directing Respondent to show cause as to why relief should not be granted. (Doc. No. 4.) On January 2, 2018, Respondent responded to the petition, conceding that based upon the facts and procedural posture of this case, Petitioner is entitled to an individualized bond hearing before an immigration judge. (Doc. No. 6.) See Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469 (3d Cir. 2015); Demore v. Kim, 538 U.S. 510 (2003); Singh v. Sabol, Civ. No. 14-1927, 2015 WL 3519075 (M.D. Pa. June 4, 2015).

Accordingly, the Court granted the petition insofar as it Ordered an individualized bond hearing before an immigration judge wherein "the immigration judge must make an individualized inquiry into whether detention is still necessary for purposes of ensuring that Petitioner attends removal proceedings and that his release will not pose a danger to the community," and that "the government bears the burden of demonstrating that Petitioner's continued detention is necessary to fulfill the purposes of the detention statute." (Doc. No. 9.) A bond hearing was held before an immigration judge on February 13, 2018. (Doc. No. 12-1, Ex.

1.) At the hearing, both parties presented evidence relating to whether Oliynyk posed a flight risk or is a danger to the community. (Doc. No 12-1, Ex. 1, 2.) Following consideration of this evidence as well as arguments by both parties, the immigration judge granted bail and released Oliynyk from custody under bond of $90,000.00. (Id. at Ex. 2, Track 7.) The immigration judge set a significant bond due to his determination that Oliynyk is a flight risk and danger to the community. (Id.) In rendering his decision, the immigration judge correctly articulated the applicable legal standards, noting that the he must consider two primary factors: (1) risk of flight and (2) danger to the community. (Id. at Track 1, 7.) The immigration judge also observed that the burden of proof and persuasion rested on the Government and it had to carry that burden of proof by clear and convincing evidence. (Id.)

On February 15, 2018, Oliynyk filed a motion to enforce the Court's February 5, 2018 Order. (Doc. No. 10.) Oliynyk maintains that he was not afforded an individualized hearing and that his bond was excessively high. (Id.) Oliynik therefore requests that this Court order his immediate release or order that a new bond hearing be conducted. (Id.)

## II. DISCUSSION

Oliynyk advances the argument that the immigration judge erroneously found that he was a flight risk and danger to the community and ignored evidence what Oliynyk characterizes as evidence to the contrary. (Doc. Nos. 10, 14.) For instance, Oliynyk argues that he submitted almost 250 pages of supporting evidence to the immigration judge prior to his hearing and it would have been impossible for the immigration judge to have considered all of these pages prior to rendering a decision. (Doc. No. 10 at 5.) Oliynyk questions whether the immigration judge considered his evidence of rehabilitation and claims that the immigration judge placed undue attention on his conviction for theft by deception, which resulted in three-and-a-half to

3

seven years' incarceration and an order to pay restitution in the amount of $431,796.36. (Id.) Respondent counters that Olyinyk's motion fails because he must first exhaust his administrative remedies by filing an appeal with the Board of Immigration Appeals ("BIA") and that he is not entitled to further habeas relief. (Doc. No. 12.)

Recently confronted with this narrow issue, the district court in Quinteros v. Sabol, Civ. No. 15-02098, 2016 WL 6525295 (M.D. Pa. Nov. 3, 2016), addressed whether it retained jurisdiction after it orders an immigration judge to conduct an individualized bond hearing. The court posed the following narrative:

> When a federal district court orders an immigration judge to conduct an individualized bond hearing as requested in a habeas petition, is it improper for the district court to retain jurisdiction for the purpose of conducting its own determination on the merits, prior to the petitioner exhausting his administrat[ive] remedies and the agency's decision becoming final? As a matter of both federalist principles and common-sense practicality, I consider it axiomatic that a federal court should not retain jurisdiction post-referral, but to the extent that it must, such review is necessarily limited to ensuring that the petitioner received the hearing he was owed in the first place. Accordingly, prior to satisfactory showings of exhaustion and finality, the district court should not revisit the merits of the immigration judge's determination. To do so would be premature and would otherwise disregard established constitutional bounds.

Quinteros, 2016 WL 6525295, at *1. The court provided that "an immigration judge's conducting an individualized bond determination . . . necessarily moot[s] an underlying habeas petition that solely requests such a hearing be held." Id.; see Carmil v. Green, Civ. No. 15-8001, 2015 WL 7253968, at *3 (D. N.J. Nov. 16, 2015) ("Petitioner has already received the sole relief available to him under Diop and Chavez-Alvarez, a bond hearing, and as such his Petition would be moot and would warrant dismissal for that reason instead.").

In Pierre v. Sabol, Civ. No. 11-2184, 2012 WL 291794 (M.D. Pa. July 17, 2012), the court considered a § 2241 Petitioner's motion under Federal Rule of Civil Procedure 60(b)(6),

4

requesting that the district court reopen his §2241 case after it had been closed upon referral to an immigration judge to conduct a bond hearing, and either require the immigration judge to reconsider his bail amount or release him from detention.  Id. at *1.  The court declined to grant such relief for two reasons.  First, the court noted that the petitioner received the relief he requested, a hearing before an immigration judge, and cited Leonardo v. Crawford, 646 F.3d 1157, 1161 (9th Cir. 2011) for the proposition that a "district court has authority to determine if there has been compliance with its earlier habeas order but acted properly in refusing to review the [immigration judge's] refusal to grant bond when the government complied with the habeas order by holding a hearing."  Id.

Second, the court concluded that the petitioner failed to exhaust his administrative remedies, providing that it could not consider his request for relief until he had exhausted his administrative remedies by appealing the bond decision to the BIA.  (Id.); see Leonard, 646 F.3d at 1160-61 (reasoning that alien failed to exhaust administrative remedies when he did not appeal the immigration judge's bond determination to the BIA before seeking habeas relief in district court); Chajchic v. Rowley, Civ. No. 17-00457, 2017 WL 4401895, at *3 (M.D. Pa. Jul. 25, 2017) (providing that "aliens who receive a bond hearing before the immigration judge" are required to "exhaust their administrative remedies and raise any issues with the BIA prior to seeking federal habeas corpus relief").

Moreover, this rule favoring exhaustion of administrative remedies as a predicate to consideration of habeas corpus petitions acknowledges the deference that should be afforded agency decisions and fosters important institutional goals, including: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3)

5

providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996).

With this precedent in mind, this Court finds that Olyinyk has not exhausted his administrative remedies, as his appeal to the BIA is currently pending, and the Court could therefore deny the motion on this ground. However, in the interest of completeness, the Court will address whether there was compliance with its earlier Order, that is, whether Oliynyk received an independent and adequate bond hearing before the immigration judge he was owed in the first place. See Quinteros, 2016 WL 6525295, at *1; Leonard, 646 F.3d at 1161.

When reviewing a bond determination by an immigration judge following an order referring a case for individualized bond consideration, this Court's review is limited to three essential considerations: (1) whether the decision of the immigration judge paid full fidelity to the law of the case; (2) whether there has been no plain legal error by the immigration judge in identifying and applying the controlling legal precepts; and (3) whether the exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process. See Chajchic, 2017 WL 4401895, at *4.

As to the first consideration described above, having reviewed the audio recording of the bond hearing before the immigration judge (Doc. No. 12, Ex. 2), the Court is satisfied that the hearing was in compliance with the Court's February 5, 2018 Order and was in accordance with the law of the case. (Doc. No. 9.) The immigration judge noted that the bond hearing was being conducted pursuant to this Court's February 5, 2018 Order to determine whether Oliynyk constituted a danger to the community or was a flight risk, and properly articulated the legal standards. (Doc. No. 12, Ex. 2 Track 1.) The immigration judge noted that he had received and reviewed Oliynyk's documentary evidence in advance of the hearing, which included "an

argument on flight risk and danger to society as evidence for bond as well as tax documents." (Id. at Track 2.)

The immigration judge also reviewed the Government's submissions and arguments that Oliynyk is a flight risk and a danger to the community. (Id. at Track 2, 3, 6, 7.) The Government introduced records of Oliynyk's criminal conduct, including his conviction for theft by deception – false impression, an aggravated felony for which he was ordered to pay $431,796.36 in restitution. (Id. at Track 6, Ex. 3.) The Government also noted that Oliynyk has no family in the United States, is not married, does not have children, has at least one conviction for DUI, an aggravated felony, and that his "support" letters from friends that he submitted to the immigration judge were over one year old. (Id. at Track 6.)

In considering the documentary evidence and Oliynyk and the Government's arguments, the immigration judge granted bail and released Oliynyk from custody under bond of $90,000.00 with the condition that he not drive unless properly licensed to drive. (Doc. No. 12, Ex. 1.) The immigration judge also noted that he set a significant bond due to his determination that Oliynyk is a flight risk and danger to community. (Id. at Ex. 2 Track 7.) While Oliynyk "may be dissatisfied with his individualized assessment, it cannot be said that the immigration judge did not follow the law of the case, as prescribed by this Court and conduct an individualized bond hearing." See Chajchic, 2017 WL 4401895, at *4.

In considering the second component, this Court finds no plain legal error in the immigration judge's identification and application of the controlling law. As noted above, the immigration judge correctly articulated that the Government has the burden, by clear and convincing evidence, to show two primary factors: (1) danger to the community and (2) flight

7

risk.  (Doc. No. 11, Ex. 2.)  Because the immigration judge properly articulated these legal standards, the Court finds no legal error in this case.

Finally, in considering the third factor, the Court does not find that the immigration judge's exercise of discretion over the bond decision was so arbitrary that it would offend fundamental tenets of due process.  When reviewing a discretionary bond decision, the degree of arbitrariness necessary to state a constitutional claim is striking and the petitioner "bears the burden of showing that there is no rational basis in the record for the [bond decision]."  Martin v. Diguglielmo, 664 F. Supp. 2d 612, 621 (W.D. Pa. 2008) (quoting Finetti v. Harris, 609 F.2d 594, 601 (2d Cir. 1979)); Chajchic, 2017 WL 4401895, at *5.  Accordingly, "federal courts do not sit as appellate courts to review the use or abuse of discretion of [other] courts in the granting or denying of bail," and the "burden is on [the] petitioner to show that the record is devoid of a rational basis for the [decision]."  Gorton v. Marsteller, 545 F. Supp. 994, 997-98 (D. Kan. 1982) (internal citations omitted); Chajchic, 2017 WL 4401895, at *5; Colavita v. Pennsylvania, Civ. No. 08-3557, 2009 WL 616649, at *4 (E.D. Pa. Mar. 6, 2009) ("To sustain a federal claim, a petitioner must demonstrate the [bond decision] was arbitrary or without any rational basis.").

In accordance with these standards, the Court concludes that the immigration judge's discretionary bond decision was rational and based upon the evidence before the immigration judge.  Accordingly, the Court finds that the immigration judge's conclusions were rational and not arbitrary or without a rational basis.

### III. CONCLUSION

For the reasons set forth above, Oliynyk's motion to enforce (Doc. No. 10), will be denied and the above-captioned action shall remain closed.  An appropriate Order follows.